JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.:  CV 15-01503-AB (AGRx) | Date:  May 27, 2015 |

Title: Raymond Alvandi v. CVS Pharmacy, Inc. et al.

Present: The Honorable  ANDRÉ BIROTTE JR.

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**    **[In Chambers] Order GRANTING Motion To Dismiss, and DENYING Motion to Consolidate**

   In March 2015, Plaintiff Raymond Alvandi filed a putative class action complaint, alleging that Defendants CVS Pharmacy, Inc. ("CVS") and Lang Pharma Nutrition, Inc. ("Lang") (collectively, "Defendants") violated various California and Rhode Island consumer protection statutes and breached express and implied warranties in connection with the marketing and sale of the CVS-branded CoQ10 softgel dietary supplements. (Alvandi Dkt. No. 2.)

   Pending before the Court are two motions.   On April 17, 2015, Alvandi filed a motion to consolidate this action with a related case, *Leo Harris v. CVS Pharmacy, Inc.*, 5:13-cv-02329-AB (AGRx).   (Alvandi Dkt. No. 15, Mot. to Consolidate.)   A week later, on April 24, 2015, Defendants filed a motion to dismiss this action for lack of subject matter jurisdiction on the grounds that Alvandi's putative class complaint fails to satisfy the jurisdictional requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, and Alvandi does not plead any other basis for subject matter jurisdiction.   (Alvandi

Dkt. No. 16, Mot. to Dismiss.) Alvandi filed an opposition to Defendants motion to dismiss (Alvandi Dkt. No. 23) and a reply in support of its motion to consolidate. (Alvandi Dkt. No. 21.) Defendants filed an opposition to Alvandi's motion to consolidate (Harris Dkt. No. 94[1]) and a reply brief in support of its motion to dismiss. (Alvandi Dkt. No. 24.)

The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. The June 1, 2015 hearing date is vacated. Having considered the materials and arguments submitted by the parties, and for the reasons indicated below, the Court **GRANTS** Defendants' motion to dismiss (Alvandi Dkt. No. 16), and this action is dismissed with prejudice. The Court **DENIES** as moot Alvandi's motion to consolidate. (Alvandi Dkt. No. 15.)

## I. BACKGROUND

### A. Leo Harris Action

In December 2013, Harris filed a false advertising putative class action on behalf of individuals who purchased the CVS-branded dietary supplement "Ultra CoQ10" from CVS. Coenzyme Q10, or CoQ10, is a naturally occurring compound produced in the human body, and people take CoQ10 supplements to, among other things, improve overall health. The packaging for the Ultra CoQ10 supplements state that the supplements provide "6X Better Absorption" than "regular CoQ-10 softgels" using a "patented VESIsorb® technology from Switzerland," and that the supplements support "Heart & Muscle Health." Lang manufactures and supplies the Ultra CoQ10 product to CVS. The U.S. Pharmacopeial Convention ("USP") sets standards for dietary supplements, including labeling standards. With respect to CoQ10, USP requires that at least 75% of the amount of CoQ10 in a given capsule (as represented on the product label) dissolve in the blood stream. In order to properly dissolve, "most" capsules must rupture within 15 minutes of ingestion, and 2 out of every 18 capsules may rupture within 30 minutes of ingestion. With respect to labeling requirements, USP only requires that CoQ10 labels state whether the capsules are water-soluble or fat-soluble. The crux of Harris' claims is that independent laboratory testing has conclusively demonstrated that the CVS Ultra CoQ10 supplements do <u>not</u> rupture within 15 minutes; that out of 12 capsules tested, only 2 fully ruptured, and even then they ruptured 50 minutes after ingestion with dissolution rates

---

[1] Harris and Alvandi filed mirror motions to consolidate in their respective actions. (*See* Harris Dkt. No. 93; Alvandi Dkt. No. 15.) Defendants filed an opposition to the motion to consolidate in the Harris action (Harris Dkt. No. 94) but not in the Alvandi action. Because the Court's ruling on Defendants' motion to dismiss renders the consolidation motions moot, the Court references Defendants' opposition filed in the Harris action only to provide background information and context.

under 28%; and that the study cited to support the "6X Better Absorption" claim is flawed. *(See generally* Harris Dkt. No. 1.)  The Court issued a Scheduling Order, which set, among other dates, a September 15, 2014 deadline for Harris to add parties or claims. (Harris Dkt. No. 28.)

In March 2014, Harris served written discovery on CVS, including interrogatories and requests for production regarding CVS's CoQ10 products, not just the CVS-branded Ultra CoQ10.  Harris was dissatisfied with CVS's discovery responses, which were comprised of just a few hundred pages and were, generally, non-substantive.  On September 9, 2015, the parties filed a joint stipulation regarding Harris' motion to compel before Magistrate Judge Rosenberg.  (Harris Dkt. No. 60-1.)  Judge Rosenberg granted in part Harris' motion to compel (Harris Dkt. No. 69), and pursuant to a court order, CVS and Lang produced several thousand pages of discovery in November 2014 and March 2015. Apparently, the productions contained documents regarding the July 2014 release of the CVS-branded dietary supplement "CVS Enhanced Absorption Formula CoQ-10" ("CVS Enhanced"), which Harris alleges is simply a rebranded version of Ultra CoQ10. (Alvandi Dkt. No. 21-1, Fitzgerald Decl. ISO Mot. to Consolidate, ¶ 2.)

### B.     Raymond Alvandi Action

Apparently, one of the attorneys representing Harris and now Alvandi spotted CVS Enhanced in a CVS store in December 2014.[2]  After independent laboratory testing of the CVS Enhanced supplements, Alvandi filed the instant putative action in March 2015. (Alvandi Dkt. No. 2, Compl.)  While the packaging on the two products differ – the CVS Enhanced packaging indicates the supplements provide "Enhanced Absorption," and the CVS Ultra packaging indicates that the supplements provide "6X Better Absorption" – Alvandi's false advertising allegations mirror those of Harris, and Alvandi alleges that the actual softgel capsules for both the Ultra CoQ10 and Enhanced CVS are identical. (Alvandi Dkt. No. 2, Compl. ¶¶ 36-37.)

According to counsel for Alvandi and Harris, but for CVS and Lang's efforts to impede discovery in the *Harris* action, Harris would have learned of the July 2014 release of CVS Enhanced – which Alvandi and Harris contend were part of an effort to repackage the false and misleading Ultra CoQ10 product – prior to the September 2014 cut-off for Harris to add parties or claims, in which case Harris would have either sought a stipulation

---

[2] Many of the factual assertions set forth in Alvandi's papers, assertions about the circumstances leading up to the filing of the Alvandi action in March 2015, are not supported by competent evidence, *i.e.*, a declaration by counsel.  Because the truth of the factual assertions does not alter the analysis, the Court assumes them to be true for purposes of ruling on the pending motions, as they provide helpful context to Alvandi's arguments.

from CVS to file an amended complaint to add claims about Enhanced CVS or filed a motion for leave to file an amended complaint under Federal Rule of Civil Procedure 15(a). (Alvandi Dkt. No. 21, Reply ISO Mot. to Consolidate at 1-2.) However, because Harris did not learn about the CVS Enhanced product until after the September 2014 cut-off, plaintiff's counsel contends that in order to include CVS Enhanced in the Harris action, counsel had no option but to file a brand new case on behalf of Alvandi regarding CVS Enhanced and then to move to consolidate the two cases. (*Id*. at 2 (explaining that plaintiffs' counsel was "procedurally bound" to file a new suit regarding CVS Enhanced, but that Harris and Alvandi "always considered these 'separate cases' to be materially identical and properly merged").)

Alvandi is the only named plaintiff in the instant putative class action. (Alvandi Dkt. No. 2, Compl.) He contends that the Court has original diversity jurisdiction under CAFA "because the amount in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs," and that separately the Court has federal question jurisdiction "because this action contains claims arising under the [MMWA]." (*Id*. at ¶¶ 7-8.) In a declaration by the Lead Product Development Manager for CVS, Defendants provide uncontroverted evidence that CVS Enhanced was first sold in CVS stores on July 4, 2014 at a price of $21.99 per container; and as of March 2015, total sales for CVS Enhanced is $28,720 nationwide. (Alvandi Dkt. No. 16-4, Molengraff Decl. ISO Mot. to Dismiss, ¶¶ 6-8.)

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure ("Rule") 12, a defendant may move, at any time, to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A federal court always has jurisdiction to determine its own jurisdiction." *In re Bunyan*, 354 F.3d 1149, 1152 (9th Cir. 2004) (citing *United States v. Ruiz*, 536 U.S. 622, 628 (2002)).

Under Rule 12(b)(1), a defendant may bring a facial attack on the court's subject matter jurisdiction, in which case, the court "assume[s] [plaintiff's] [factual] allegations to be true and draw[s] all reasonable inferences in his favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Courts do not accept the truthfulness on any legal conclusions contained in the complaint when assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Under Rule 12(b)(1), a defendant may also bring a factual attack on the district court's subject matter jurisdiction. Unlike a Rule 12(b)(6) motion or a facial Rule 12(b)(1) motion, a factual attack on subject matter jurisdiction under Rule 12(b)(1) affords the district court discretion to consider extrinsic evidence and, if disputed, weigh the evidence to determine whether the facts support subject matter jurisdiction without

converting the motion to dismiss into a motion for summary judgment. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In this case, the Court does not presume the truthfulness of the plaintiff's allegations. *Id.* "The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." *Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).

### III.  DISCUSSION

#### A.  Alvandi Cannot Meet The CAFA Jurisdictional Requirement

Federal courts have original jurisdiction under CAFA where the number of proposed plaintiffs is greater than 100, there is a diversity of citizenship between any member of the class and any defendant, and the amount in controversy is more than $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). Though a putative class action complaint need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, when the amount in controversy is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, -- U.S. --, 135 S. Ct. 547, 550 (2014) (analyzing jurisdiction in the context of when a defendant removes an action to federal court under CAFA).

Alvandi's complaint alleges, generally, that the Court has original diversity jurisdiction under CAFA because "the amount in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs." (Alvandi Dkt. No. 2, Compl. ¶ 7.) As stated above, Defendants dispute Alvandi's amount in controversy and provide uncontroverted evidence that as of March 2015, sales for CVS Enhanced total only $28,720 for CVS stores nationwide. (Dkt. No. 16-4, Molengraff Decl. ISO Mot. to Dismiss, ¶¶ 7-8.) Thus, even if Alvandi and the putative class were to recover the total sale amount of all CVS Enhanced units sold, Alvandi still could not satisfy the CAFA jurisdictional amount in controversy. Alvandi, by virtue of not contesting Defendants' evidence, does not challenge the fact that he does not meet the CAFA jurisdictional amount in controversy. Instead, Alvandi contends that the "most appropriate course of action" is for the Court to consolidate the Harris and Alvandi cases before deciding the jurisdictional issue because when the two actions are decided together, the CAFA amount-in-controversy jurisdictional requirement is met. (Alvandi Dkt. No. 23, Opp. to Mot. to Dismiss.)

Generally a court cannot consider a motion to consolidate where the court does not have subject matter jurisdiction over the case. *See, e.g.*, *Fed. Nat. Mortgage Ass'n v. Lemon*, 2011 WL 3204344, at *3 (C.D. Cal. July 26, 2011) ("Federal Rule of Civil Procedure 42 allows the court to consolidate actions with a common question of law or fact that are properly before the court. . . . As the court does not have subject matter

jurisdiction over the complaint, the court cannot consolidate this action as requested by Defendant with [the other] matter."). There is an exception to the general rule, however, where plaintiffs try to "game the system" by artificially splitting their claims and filing separate state class actions when there is "no colorable basis for dividing up the sought-for retrospective relief . . ., other than to frustrate CAFA." *Freeman v. Blue Ridge Paper Products, Inc.*, 551 F.3d 405, 408-09 (6th Cir. 2008). Courts in the Ninth Circuit have consistently held that the *Freeman* "no colorable basis" exception should be narrowly construed. *See, e.g.*, *Seasons Homeowners Ass'n Inc. v. Richmond Am. Homes of Nevada, Inc.*, 2014 WL 2772298, at *5 (D. Nev. June 18, 2014) (declining to apply the *Freeman* exception because there was no indication that the plaintiffs divided their claims to avoid federal jurisdiction under CAFA); *Site Mgmt. Solutions, Inc. v. TMO CA/NV, LLC*, 2011 WL 1743285, at *4 (C.D. Cal. May 4, 2011) (declining to apply the *Freeman* exception to a non-CAFA case where the plaintiff "demonstrated that it had more than a colorable basis—in fact, a good reason—for initiating this [unlawful detainer] action solely with respect to [a single] site," and "unlike *Freeman*, this is not a case in which [the plaintiff] divided its claims into separate lawsuits to expand recovery" because the plaintiff "ha[d] not actually filed unlawful detainer actions to obtain possession of the remaining 24 disputed sites."); *Royalty Alliance, Inc. v. Tarsadia Hotel*, 2010 WL 3339202, *3 (S.D. Cal. Aug. 23, 2010) (rejecting defendant's request, following removal, to combine two cases for purposes of determining CAFA jurisdiction because "while similarities exist between the claims, there [was] a colorable basis for dividing up the lawsuits as Plaintiffs have done").

Alvandi argues emphatically that "[t]here is no colorable basis for separating the Harris and Alvandi actions because they involve the same product, class, claims, and proofs." (Alvandi Dkt. No. 21, Reply ISO Mot. to Consolidate at 4-5.) Alvandi's argument falls short for at least three reasons. First, and most obviously, Alvandi's argument that there was no colorable basis to file separate lawsuits makes no sense because Alvandi did, in fact, file a separate lawsuit vis-à-vis the same counsel representing Harris. Second, the *Freeman* exception is meant to confer federal jurisdiction under CAFA when plaintiffs are trying to "game the system" and file separate claims for no reason other than to "frustrate CAFA. *Freeman*, 551 F.3d at 408-09. Here, unlike in *Freeman*, the plaintiffs (Alvandi and Harris) are the ones seeking federal CAFA jurisdiction. Finally, while the two actions involve the same underlying product (albeit packaged differently) and same legal theories, there is at least a colorable basis for filing the two claims separately because the proposed classes are slightly different. The Harris proposed class includes individuals who purchased Ultra CoQ10, with the package claiming "6X Better Absorption," while the Alvandi proposed class includes individuals who purchased CVS Enhanced, with the package claiming only "Enhanced Absorption." The fact that these two proposed classes *could be* sub classes in the same class action does not change the fact that there is a colorable basis for filing them separately.

Accordingly, combining the Alvandi and Harris actions for purposes of calculating the jurisdictional amount in controversy is unwarranted, and Defendants have established by the preponderance of the evidence that this Court lacks subject matter jurisdiction under CAFA.

### B. Alvandi Cannot Meet the MMWA Jurisdictional Requirement

Separately, this Court does not have subject matter jurisdiction under the MMWA, which provides federal courts with original subject matter jurisdiction over state law express and implied warranty claims. *See* 15 U.S.C. § 2301 *et seq*.

Like CAFA, the MMWA comes with explicit jurisdictional requirements for the maintenance of a class action lawsuit. Specifically, the MMWA provides that "[no] claim shall be cognizable in a suit brought under [the Act] . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C). In this case, Alvandi indisputably brings a class action, and he is the only named plaintiff. Accordingly, this Court lacks subject matter jurisdiction under the MMWA.[3]

### IV. CONCLUSION

For the reasons stated above, combining the Alvandi and Harris actions for purposes of calculating the CAFA jurisdictional amount in controversy is unwarranted. In light of Defendants uncontroverted evidence that the amount in controversy is well below the $5,000,000 jurisdictional requirement, this Court lacks subject matter jurisdiction under CAFA. Additionally, this Court lacks subject matter jurisdiction under the MMWA because Alvandi brought this action as a class action, and he is the only named plaintiff. Because Alvandi asserts no other basis for federal subject matter jurisdiction, Defendants' motion to dismiss (Dkt. No. 16) is **GRANTED**, and Alvandi's complaint is dismissed with prejudice. Alvandi's motion to consolidate (Dkt. No. 15) is **DENIED** as moot.

The Scheduling Conference set for July 20, 2015 is hereby vacated.

**IT IS SO ORDERED.**

---

[3] Alvandi does not address any of Defendants' substantive arguments regarding the lack of MMWA jurisdiction, and therefore the Court presumes Alvandi concedes this issue.